Newport, Sc.
Milton J. Budlong
vs.
Jessie Margaret Budlong
No. 2646

October 26, 1927

CARPENTER, J. This is an action for divorce. The evidence shows that the parties were married on November

9, 1898, and lived together until October, 1923, when the respondent left the petitioner. Thereafter, the respondent brought three actions for divorce from bed and board. The first action was instituted in October, 1923, and was discontinued in 1924. The second action was commenced in 1924 and was tried on the merits by Mr. Justice Capotosto in 1925, resulting in a denial of the petition. No exception was taken to the decision. Thereafter, a third action was begun in April, 1925, which action was dismissed by Mr. Justice Sumner.

In October, 1925, the petitioner brought an action for divorce from bed and board on the ground of extreme cruelty, which action was tried on the merits before Mr. Justice Blodgett in 1926. The issues in that case were identical with the issues herein, and the trial resulted in a decision for the petitioner. That case is now in the Supreme Court upon exception to the decision.

In May, 1927, the petitioner brought this action for absolute divorce on the ground of extreme cruelty.

A detailed statement of the evidence seems unnecessary and would serve no useful purpose. A general statement of the case and my findings of fact will suffice. The parties lived together for many years in New York and elsewhere without serious differences. About 1919 the respondent became obsessed with an insatiable desire for money, and urged her husband to give her, or put in trust for her, a large sum of money. Upon his refusal to comply with her wishes, she became bitter and frequently discussed the subject in public in the presence of her husband in such a manner as to cause him great humiliation. As time went on the situation grew worse, and the wife refused to cohabit, threatened to leave and to divorce the husband unless her wishes with respect to money were complied with. The parties lived at the Reef in Newport during the summer of 1923, at the conclusion of which the respondent unjustifiably refused to return to New York with her

husband, and they have since lived separate and apart. The respondent's treatment of the petitioner with respect to and immediately after the Tailer incident at Newport, her untruthful and abusive charges against his character at the Plaza in New York in 1923, her refusal to cohabit with the petitioner, and her refusal to return to New York were particular incidents of extreme cruelty, which, taken with her conduct in general from 1919 to 1923, clearly justify a divorce. I find as a fact that at various times from 1919 to 1923 the respondent was guilty of extreme cruelty towards the petitioner. This cruelty took the form of persistent and repeated untruthful accusations against the petitioner, made in his presence, both in public and private, which accusations were of a character to cause, and which did cause him humiliation and mental suffering which seriously affected his health.

The evidence shows that throughout this period the petitioner was a kind and generous husband, always solicitous of the welfare of his wife and children, and that he was upright and honorable in his marital relations. On the other hand, the respondent constantly, in public and private, falsely accused the petitioner of being mean and parsimonious, and unwilling to provide for his wife, and having unwarranted relationship with other women. I find that insofar as there was condonation of the wife's conduct, this was conditional upon the latter's good behavior, and that the offenses were repeated again and again, until October 1923, when the respondent, without justification on her part, refused to return to the husband's home in New York, and brought her first action for divorce against him.

The evidence also shows that the respondent was guilty of cruel and abusive treatment in making unfounded charges against the petitioner's character in the second divorce petition brought by her, which petition was denied by Mr. Justice Capotosto after a lengthy hearing.

The false charges of infidelity, of cruelty, of neglect to provide, made in that case, and in the bill of particulars filed therein, constituted a flagrant case of cruel and abusive treatment. In that action, from which no appeal was taken, it was determined that the charges made were untrue, and that instead of the petitioner herein being the guilty party, he was the one aggrieved. I regard the making of unfounded charges of the character contained in the bill of particulars referred to, with all the publicity necessarily ensuing therefrom, as a gross act of cruelty in itself sufficient to warrant a divorce if the petitioner's health was affected thereby. The uncontradicted testimony shows, and I find that his health was impaired by reason thereof.

The conduct of the respondent after the termination of the action brought by her was also sufficient to sustain the charge of extreme cruelty. The evidence shows that immediately after the delivery of the children to the petitioner, in accordance with the decree of the Court, the respondent rushed to New York ahead of her husband and children, and unjustifiably took possession of a portion of the petitioner's apartment, locked herself in a bedroom of said apartment, gave to the press of New York City, false statements to the effect that her husband was starving her, that he had caused the water to be turned off, that he was threatening her with bodily harm, and that if anything happened to her it would be murder. On several occasions she threw notes containing such statements, pinned to her husband's shirts, from the window of the apartment on the eleventh story to the waiting crowd in the street below. The resulting publicity created a situation almost impossible for any normal man to stand. The respondent knew that the petitioner was extremely sensitive to publicity and that publicity of the kind in question would cause him much suffering. That it did cause him real pain and suffering to such extent that he became on the verge of a nervous breakdown, requiring the consulting of medical advisers, is undisputed. To a highly sensitive man of the type of the petitioner, the conduct of the respondent in the New York apartment, resulting in newspaper publicity calculated to discredit the high standing and reputation of the petitioner in his own community, was cruelty of the highest degree. But that was not all. Shortly after the New York incidents, the respondent followed the petitioner to Rhode Island and in April 1925, instituted another divorce action, which was dismissed by Mr. Justice Sumner. Thereafter she obtained admission to the petitioner's residence in Newport, and refused to leave unless ejected by force, and only left as a result of an injunction issued by the Court. Thereupon a similar occurrence took place in the gardener's cottage on the petitioner's Newport estate, and again the respondent refused to leave until forced to do so by court order. The entire conduct of the respondent from the time she entered the New York apartment until she was forced to leave the gardener's cottage shows a relentless desire on her part to cause her husband pain and suffering, and consitutes one of the most flagrant cases of extreme cruelty ever called to the attention of the Court.

I am satisfied that the above mentioned conduct of the respondent (1) before the separation of the parties; (2) in making the false and unfounded charges referred to in connection with the second divorce petition, and (3) subsequent to the decision of that case, was in each instance sufficient to justify a divorce on the ground of extreme cruelty. Taken together, there can be no question as to their sufficiency.

The respondent has maintained that the petitioner is not a bona fide resident of Rhode Island and therefore that this Court has not the requisite jurisdiction to grant a divorce. I am satisfied from the evidence that the petitioner returned to this State in April 1925, with the intention of making Rhode Island his

home, and that he has resided in this State continuously since that time, and I find as a fact that at the time of the filing of the petition he was a legally domiciled inhabitant of Rhode Island and had been such for more than two years, and that he was a resident of the City of Newport.

I therefore grant the petition for a divorce.

There are two minor children of the parties, boys now fourteen and eleven years of age respectively. Under previous decrees of this Court the custody of these children has been given to the petitioner. I am thoroughly convinced from the testimony that the welfare of these boys demands that the custody of these children remain with the petitioner. I am convinced that, although the moral character of the respondent is without criticism, her temperament is such that she lacks the ability to properly control them. The father should be given their custody, the mother to see them at such times and under such conditions as the father shall determine.

A decree may be entered accordingly.

For petitioner: Hinckley, Allen, Tillinghast & Phillips.

Respt.: *pro se ipse.*